### STATE ex rel. SIMONS v. NYQUIST et al.

Under Const. art 9, requiring the Legislature to provide by general law for the location of county seats, and declaring that where the county seat has not been located by a majority vote the county board must submit the location to the electors, and Rev. Pol. Code, §§ 750-774, relating to the organization of counties, and providing for temporary location of the county seat until the next general election thereafter, etc., the selection of a county seat on the organization of a county is temporary, and the selection thereof is not made by a majority vote within the Constitution, and the county board must submit the question to the electors of the county at a general election.

(Opinion filed, June 11, 1908.)

Appeal from Circuit Court, Gregory County. Hon. E. G. SMITH, Judge.

Mandamus by the state, on the relation of Louis Simons, against Adrian Nyquist and others, to compel respondents to submit the question of the location of the county seat of a county to the voters at the next general election. From an order sustaining a general demurrer to the alternative writ, relator appeals. Reversed.

C. H. Williamson and W. J. Hooper, for appellant. French & Orvis, for respondents.

FULLER, J. This appeal is from an order sustaining a general demurrer to an alternative writ of mandamus directed to respondents, the county commissioners of Gregory county, requiring such officers to submit the question of the location of the county seat to the voters at the next general election or show cause why the same should not be done, and the governmental status of the county is disclosed by the following essential recitals of the writ: "That Gregory county is an organized county of said state, and was organized in the year 1898; that at the first election for said county held in the month of August, 1898, there was submitted to the voters of said county the question of a temporary location of

the county seat for said county, and that at said election Fairfax was, by the majority of the votes cast at said election chosen as the temporary county seat of said county; that the commissioners of said county have failed and neglected to submit to the voters of said county, at any general election held since the organization of said county, the question of the location of the county seat for said county."

Conformable to sections 750 to 774, inclusive, of the Revised Political Code, this county organization was affected by means of an election called by the governor upon the petition of the required number of voters and the statutory notice designating the polling places, providing for the temporary location of the county seat, and naming the offices to be filled by such election "until the next general election thereafter, and until their successors are elected and qualified." Section 753 is as follows: "The electors at such election are hereby empowered to vote for and select a county seat of such county temporarily by ballot, subject to be changed thereafter as provided by law; and each voter at such election may designate on his ballot the place of his choice for county seat, and the place having the highest number of votes polled shall be the temporary county seat." Article 9 of the Const. requires the Legislature to provide by general law for the location of county seats, the change of county boundaries, the organization of new counties, including their division into townships, and section 2 of the act is as follows: "In counties already organized where the county seat has not been located by a majority vote, it shall be the duty of the county board to submit the location of the county seat to the electors of said county at a general election. The place receiving a majority of all votes cast at said election shall be the county seat of said county."

The county organization effected pursuant to the statute under consideration is permanent, but the county seat is temporary, and so are the officers chosen, in the sense that their tenure depends upon the proximity of the special election to the next general election, and the legislative design to select such county officers as well as the seat of county government for organization purposes only is quite apparent from the various provisions of the act.

Whenever there 'are 150 voters in any unorganized county, they may petition the Governor to form a county organization, and thereupon he is required to issue a notice of election designating therein one or more polling places in the county, the offices to be filled by ballot until the next general election, and the question of the temporary location of the county seat, subject to be changed thereafter as provided by law, must also be submitted. As a sparsely settled community may become an organized county with but 150 voters within its boundaries, some of whom may not attend the election, and all who vote may exercise the independent right of choice as to the temporary location of a county seat, the question may really be determined adversely to the popular will, and in any event the rapid changes usually wrought in a new county may immediately render the place selected for a temporary county seat exceedingly objectionable to a large majority of qualified electors who have never had an opportunity to vote upon the proposition. Though a majority of the votes cast at the special election held for the purpose of organizing Gregory county in August, 1898, were in favor of Fairfax, the selection was but temporary, and not determinable by a majority vote, for the reason that the statutory method pursued gives each voter the right to designate on his ballot the place of his choice, but plainly declares that "the place having the highest number of votes polled shall be the temporary county seat."

From the foregoing considerations and a careful examination of the statute, it seems reasonably clear that the county seat has not been located at Fairfax by a majority vote within the meaning of the Constitution. The order sustaining the general demurrer to the alternative writ of mandamus is reversed.